IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEARNQUEST, INC, | CIVIL ACTION |
| Plaintiff, | |
| *v.* | NO. 2:20-cv-02309-KSM |
| ALCHEMY SOFTWARE SOLUTIONS, INC., | |
| Defendant. | |

## MEMORANDUM

MARSTON, J.                                                September 14, 2021

Plaintiff Learnquest, Inc. brings claims for breach of contract, tortious interference, and equitable relief against Defendant Alchemy Software Solutions, Inc.[1] ("Alchemy USA").  (Doc. No. 6.)  Taking the allegations in the amended complaint as true,[2] the relevant facts are as follows.

On March 8, 2016 the parties entered into a Subcontractor Agreement, under which Alchemy USA agreed to provide IT instruction to Learnquest's clients across the world.  (*Id.* at ¶¶ 7–12.)  Each time it provided instruction, Alchemy USA was supposed to immediately submit

---

[1] Alchemy USA notes in its motion to dismiss that its proper name is Alchemy Software Solutions, LLC.  (Doc. No. 11-1 at p. 1 n.1.)  The reference to Alchemy Software Solutions, *Inc.* in the caption appears to be a typographical error, because in the body of the complaint, Learnquest refers to "Defendant, Alchemy Software Solutions, *LLC*."  (Doc. No. 6 at ¶ 2 (emphasis added).)

[2] Alchemy USA argues that Learnquest has sued the wrong party and that all of the actions described in the amended complaint are in fact attributable to Alchemy India.  Although there seems to be some truth to this assertion (*see* Doc. Nos. 11-1, 11-2, 11-3), we are compelled to accept the allegations in the operative complaint as true when deciding a Rule 12(b)(6) motion.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

an invoice to Learnquest for payment.  (Doc. No. 6-1, Ex. A, 2016 Subcontractor Agreement at § 2 ("The Subcontractor agrees to invoice the Contractor immediately upon completion of training services.").)  However, Alchemy USA frequently submitted untimely and contradictory invoices or submitted the invoices to Learnquest's India office instead of Learnquest's Pennsylvania office.  (Doc. No. 6 at ¶¶ 12–15; *see also* 2016 Subcontractor Agreement at § 2 ("All invoices are to be submitted electronically . . . or sent by mail to Two Bala Plaza, 333 City Ave. Suite 800, Bala Cynwyd, PA 19004[.]").)  Because of these errors, Learnquest was forced to hire a forensic accountant and administrative personnel to investigate the invoices, and ultimately failed to pay Alchemy USA for some of its services.  (Doc. No. 6 at ¶¶ 16, 28.)  When Alchemy USA's bills, which totaled around $150,000, remained unpaid, Alchemy USA employees discussed the unpaid invoices and "other internal matters" with Learnquest's clients in India.  (*Id.* at ¶¶ 16, 17.)  Learnquest claims that these discussions threatened its business operations and client relationships and led to the loss of significant potential revenue.  (*Id.* at ¶¶ 23–24.)  Learnquest also alleges that it incurred "business disruptions of clientele in the United States" and associated costs and manpower to remedy the disruption caused in the India office as a result of Alchemy USA's disclosure of "confidential information."  (*Id.* at ¶¶ 19–22.)

On May 15, 2020, Learnquest filed this action against Alchemy USA, asserting claims for breach of contract, tortious interference, and equitable relief.  (*See* Doc. Nos. 1 & 6.) Alchemy USA has moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7), arguing that Learnquest has not alleged sufficient facts to state any of its claims and that Alchemy India is a necessary and indispensable party that Learnquest failed to join.  (Doc. No. 11.)  We address each argument in turn.

## I.    *Motion to Dismiss Under Rule 12(b)(6)*

First, Alchemy USA moves to dismiss the complaint in its entirety under Rule 12(b)(6). (Doc. No. 11-1 at pp. 12–19.)  To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Id.* (quotation marks and alterations omitted). Similarly, the court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, *Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Because Learnquest attaches a copy of the parties' 2016 Subcontractor Agreement to the amended complaint (*see* Doc. No. 6-1), and the agreement is integral to Learnquest's breach of contract claim (*see* Doc. No. 6 (Count I)), we may consider it in deciding this motion to dismiss.

### A.    **Count I:  Breach of Contract**

In pleading a claim for breach of contract, Learnquest must "allege facts giving rise to a reasonable inference that discovery will reveal evidence that 'there was a contract, [Alchemy USA] breached it, and [Learnquest] suffered damages from the breach.'"  *Davis v. Wells Fargo,* 824 F.3d 333, 351 (3d Cir. 2016) (quoting *McShea v. City of Philadelphia*, 995 A.2d 334, 340

(Pa. 2010)).  Alchemy USA does not dispute that it has a contractual relationship with
Learnquest per the 2016 Subcontractor Agreement.  (Doc. No. 11-1 at p. 15.)  Instead, Alchemy
USA argues that Learnquest has provided only conclusory allegations of breach and a
"threadbare recital of harm."  (*Id.* at pp. 15–16.)

In its amended complaint, Learnquest alleges that Alchemy USA breached the 2016
Subcontractor Agreement by:

1. Failing to submit invoices in accordance with the timeline in the Agreement;

2. Failing to submit invoices to the proper office in accordance with the Agreement;

3. Disclosing confidential information to Learnquest's clients;

4. Failing to conduct and submit student evaluations; and

5. Failing to conduct and submit employee drug tests.

(Doc. No. 6 at ¶¶ 26–27.)  Given the standard of review for motions to dismiss under Rule
12(b)(6), the Court finds that Learnquest has stated a claim as to the timeliness of invoices, the
submission location of invoices, and the disclosure of confidential information.  As to the student
evaluations and the drug tests, however, the Court finds that these conclusory assertions fail to
state claims for breach of contract because they are unsupported by factual allegations and
Learnquest has failed to plead damages.

As it pertains to the timeliness and submission location of invoices, Learnquest alleges
that between 2016 and April 2019, Alchemy USA submitted untimely and contradictory invoices
to the wrong Learnquest office, (*Id.* at ¶ 14), and as a result, Learnquest incurred damages in the
form of additional labor costs and a forensic accounting to investigate and remedy the
improperly submitted invoices (*id.* at ¶ 28).  Learnquest also alleges that because Alchemy USA
failed to submit proper invoices, Learnquest was unable to pay the outstanding amount (*id.* at ¶

16), a fact which Alchemy USA then discussed with Learnquest's clients (*id.* at ¶ 17), which in turn, caused disruption and revenue loss with those existing clients (*id.* at ¶¶ 20, 23, 24, 28). These allegations suggest that Alchemy USA breached the provisions in the 2016 Subcontractor Agreement that require immediate submission of invoices to Learnquest's Pennsylvania office (Doc. No. 6-1 at p. 1 § 2), as well as the provision prohibiting the disclosure of confidential information, including "pricing" information (*id.* at p. 2 § 7).[3]  In sum, although we agree with Alchemy USA that many of the allegations in the amended complaint are vague, viewing those allegations and drawing all inferences in the light most favorable to Learnquest, we find that Learnquest has managed to state a claim for breach of the 2016 Subcontractor Agreement as to these three issues.

Learnquest has not, however, alleged any facts to support its assertion that Alchemy USA failed to conduct and submit student evaluations and employee drug tests.  (Doc. No. 6 at ¶ 26.) Neither has it alleged any facts that suggest Learnquest was damaged by this conduct.  Because conclusory allegations are insufficient to survive a motion to dismiss, the breach of contract claim is dismissed as to these two issues.  *See Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) ("[W]e must accept the allegations in the complaint as true, but are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." (quotation marks omitted)).

### B.    *Count II: Tortious Interference with Contract*

In Count II, Learnquest brings a claim for tortious interference with contract, arguing that Alchemy USA purposefully interfered with Learnquest's contractual and business relationships

---

[3] We do not at this time find that confidential "pricing" information necessarily includes the amount of unpaid invoices.  We merely find that given this provision, Learnquest's allegations satisfy the plausibility standard that we are required to use at the motion to dismiss stage.

by "taking, using and/or misappropriating Plaintiff's confidential, proprietary information" and by "filing frivolous criminal actions in India related to outstanding invoices."[4] (Doc. No. 6 at ¶ 31.)

To state a claim for tortious interference, Learnquest must allege: (1) "the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party;" (2) "purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring;" (3) "the absence of privilege or justification on the part of the defendant;" and (4) "legal damage to the plaintiff as a result of the defendant's conduct."[5] *Acumed LLC v. Advanced Surgical Servs., Inc.,* 561 F.3d 199, 212 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 530 (3d Cir. 1998)). Because Learnquest alleges that it has contracts with its other clients, Alchemy USA concedes that the first element is satisfied. (Doc. No. 11-1 at p. 18.) It maintains, however, that Learnquest has failed to allege any facts to support the remaining three elements.

Beginning with the second element, Alchemy USA argues that Learnquest has not alleged a purposeful action by Alchemy USA that shows an intent to interfere. With one exception, we agree. Learnquest vaguely asserts that Alchemy USA misappropriated Learnquest's "confidential information" and filed criminal actions against Learnquest in India.

---

[4] Learnquest asserts that Alchemy USA filed the criminal actions in an effort to interfere with Learnquest's contractual relations. Alchemy USA argues that the criminal actions in India are entitled to judicial privilege or immunity under Pennsylvania law. (Doc. No. 11-2 at p. 17 n.7.) This privilege "(1) only applies to communications, and (2) does not apply to communications not either pertinent and material to the redress or relief sought, or essential to the exploration of legal claims in litigation." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 311–12 (3d Cir. 2003) (quotation marks omitted). The privilege does not prevent us from considering the fact that the Indian criminal actions were filed.

[5] Where the interference is with a prospective contract, the plaintiff must also show "a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC*, 561 F.3d at 212. This element is not at issue here.

(Doc. No. 6 at ¶ 31.)  But Learnquest does not describe with specificity the confidential information, explain how Alchemy USA misappropriated it, or when they misappropriated it. Similarly, Learnquest has not alleged any facts from which the Court can infer that the Indian criminal actions were filed in an attempt to interfere with Learnquest's client relationships.  *See Umamo Med., Inc. v. Disorb Sys., Inc.*, No. CV 18-4338, 2020 WL 2512800, at *5 (E.D. Pa. May 15, 2020) (dismissing a claim for tortious interference because the plaintiff failed to allege any facts suggesting that the defendant purposefully intended to harm the alleged contractual relation); *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 461 (E.D. Pa. 2011) (finding tortious interference claim fails because the "record is deficient of evidence of purposeful action by Defendants specifically intended to prevent a prospective relation from occurring").  In short, both actions are described in such vague and general terms, that it is impossible for the Court to find the second element satisfied.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that although a plaintiff does not need to include "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must "provide the grounds of his entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." quotation marks omitted)).

The one exception to this finding is that, as written, the complaint suggests that the amount of the unpaid invoices is "confidential information" that Alchemy USA shared with Learnquest's other clients for the sole purpose of causing Learnquest harm.  (Doc. No. 6. at ¶¶ 17, 35, 38.)  As to this limited allegation, we find the second element satisfied because Learnquest explicitly alleges the nature of the disclosure, that it was meant to harm Learnquest's client relationships, and that the disclosure caused actual damage in the form of lost revenue. *See Elias Indus., Inc. v. Kissler & Co. Inc.*, 2:20-CV-01011-CCW, 2021 WL 2141509, at *7

(W.D. Pa. May 26, 2021) ("The Pennsylvania Supreme Court has emphasized that tortious interference is intentional: the actor is acting as he does *for the purpose of causing harm* to the plaintiff." (quotation marks omitted)).  However, we nonetheless dismiss this claim because Learnquest has not satisfied the third element.

For the third element, Learnquest contends that "[s]aid actions of Alchemy USA were and continue to be without privilege . . . ."  (Doc. No. 6 at ¶ 33.)  "[T]o recover on a tortious intentional interference with existing or prospective contractual relationships claim in Pennsylvania, a plaintiff must prove that the defendant was not privileged or justified in interfering with its contracts."  *Acumed LLC*, 561 F.3d at 214.  In Pennsylvania, "courts require the plaintiff, as part of his prima facie case, to show that the defendant's conduct was not justified."  *Id.* (quoting *Triffin v. Janssen*, 626 A.2d 571, 574 n.3 (Pa. Super. Ct. 1993)).

Under this factor, the Pennsylvania Supreme Court has held that the "conveyance of truthful information cannot reasonably be deemed to be 'improper' interference."  *See Walnut Street Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 479 (Pa. 2011) (adopting Restatement (Second) of Torts § 772 and holding "as a matter of law that BCI's truthful statement to Procacci about WSA was not an improper interference, and cannot, on its own, support a claim for tortious interference with contractual relations"); *see also* Restatement (Second) of Torts § 772 ("One intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person . . . truthful information[.]"); *MFS, Inc.*, 771 F. Supp. 2d at 461 ("Although Defendant Robbins conversed with a potential purchaser, he was merely providing truthful information which cannot be the basis of an intentional interference with prospective contractual relations claim.").  In its amended

complaint, Learnquest admits that it did not pay Alchemy USA's invoices.  (Doc. No. 6 at ¶¶ 16, 19.)  Therefore, any discussions between Alchemy USA and Learnquest's clients about the fact or amount of those unpaid invoices was truthful and cannot give rise to a claim for tortious interference with contractual relations.

For those reasons, Count II is dismissed.

### C.    *Count III: Equitable Relief (Recission)*

Third, Learnquest seeks recission of the 2016 Subcontractor Agreement on the grounds that Alchemy USA "intentional[ly] disrupt[ed] Plaintiff's business and fail[ed] to adhere to the terms of the Agreement."  (Doc. No. 6 at ¶ 40.)  Alchemy USA asserts that Learnquest has failed to plead facts that suggest recission is warranted, and to the contrary, the allegations in the amended complaint show that rescission is inappropriate because Learnquest has outstanding invoices for $150,000.  (Doc. No. 11-1 at p. 18.)  The Court agrees.

"It is axiomatic that 'a recission can only be granted where the parties to a contract can be restored to their original positions with regard to the subject matter of the contract.'"  *Harold ex rel. Harold v. McGann,* 406 F. Supp. 2d 562, 575 (E.D. Pa. 2005) (quoting *Doppler v. Doppler*, 574 A.2d 1101, 1106 (Pa. 1990)).  Here, recission would not restore the parties to their original positions because the facts, as alleged in the amended complaint, show that recission would release Learnquest from its responsibility to pay the outstanding invoices and leave Alchemy USA with the unpaid debt.  *See Doppler*, 574 A.2d at 1106 ("Mrs. Doppler will not be restored to her original position with respect to the property if she receives only half of its present value and nothing further," because "[f]or twenty years, Mrs. Doppler has maintained the property, paid off the mortgage in full, and paid all taxes without any contribution from Mr. Doppler.").

In the alternative, because Learnquest is seeking recission on the same grounds for which it seeks damages for breach of contract and tortious interference, an adequate legal remedy exists and recission is not warranted. *Harold,* 406 F. Supp. 2d at 574 ("Plaintiff has not in fact pled grounds adequate to support rescission, because he has an adequate remedy at law and the parties cannot be returned to their original status.").

Therefore, we dismiss Count III as well.

## II.   *Motion to Dismiss Under Rule 12(b)(7)*

Alchemy USA also moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party as required by Rule 19. (Doc. No. 11-1 at pp. 19–21.) Specifically, Alchemy USA argues that Learnquest has purposefully sued it instead of Alchemy India, a separate legal entity, and that Alchemy India, not Alchemy USA, submitted the incorrect invoices, filed the Indian criminal complaints, and shared Learnquest's confidential information. (*Id.* at p. 22.) Alchemy USA further asserts that the $150,000 in unpaid fees is due to Alchemy India, not itself, and that any discovery in this suit is under the control of Alchemy India, not Alchemy USA. (*Id.*) Given these facts, Alchemy USA contends that Alchemy India is a "clearly necessary party within the meaning of Rule 19(a)." (*Id.*) Alchemy USA also argues that "Alchemy India is indispensable," and because Alchemy India's addition would eliminate diversity jurisdiction, the entire case must be dismissed.

The Rule 19 analysis proceeds in three steps. First the court analyzes whether the absent party is necessary under Rule 19(a)(1). *Gen. Refractories Co. v. First State Ins. Co.,* 500 F.3d 306, 312 (3d Cir. 2007). If the absentee is a necessary party, then the court turns to step two and analyzes whether adding the absentee will strip the court of diversity jurisdiction. *Id.* If it will, the court goes to the third step and must determine whether the absentee is indispensable under

Rule 19(b).  *Id.*  If the party is both necessary and indispensable, "the action cannot go forward" and must be dismissed.  *Id.*

> Beginning with step one, a party is "necessary" when:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: i) as a practical matter impair or impede the person's ability to protect the interest; or ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Here, Alchemy India does not "claim[ ] an interest" in this case, so we must focus on whether we can "grant complete relief to persons *already named* as parties to the action."  *Gen. Refractories Co.,* 500 F.3d at 313.

The only remaining claim in this action is for breach of contract, which revolves around the 2016 Subcontract Agreement attached to the amended complaint.  (Doc. No. 6-1.)  That contract is between Learnquest and Alchemy USA.  (*Id.* at pp. 1, 4).  Nothing in the agreement itself, the allegations in the amended complaint, or the documents attached to Alchemy USA's motion suggest that Alchemy India is a party to the agreement or otherwise involved in the parties' contract, such that its addition in this case is necessary to afford complete relief.  Put another way, the Court can determine whether Alchemy USA breached the 2016 Subcontractor Agreement and is liable to Learnquest without Alchemy India's addition to this lawsuit.  And as for Alchemy India's control over potential discovery, Learnquest can use nonparty subpoenas to discover any relevant documents in Alchemy India's possession.

Therefore, we deny the motion to dismiss under Rule 12(b)(7).

## III.    *Conclusion*

For the reasons discussed above, Alchemy USA's motion to dismiss is granted in part and denied in part.  The motion is denied as to Count I to the extent that claim relies on Alchemy

USA's failure to submit timely invoices, failure to submit invoices to the correct location, and disclosure of confidential information.  The motion is granted as to the remainder of Count I and the entirety of Counts II and III.  An appropriate Order follows.